*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0065p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

R.S.W.W., INC., d/b/a Goose Island Brewery, et al.,
  *Plaintiffs-Appellants,*

  *v.*

CITY OF KEEGO HARBOR, et al.,
  *Defendants-Appellees.*

No. 01-2695

Appeal from the United States District Court
for the Eastern District of Michigan at Flint.
No. 98-40377—Paul V. Gadola, District Judge.

Argued: July 29, 2003

Decided and Filed: February 10, 2005

Before: DAUGHTREY and MOORE, Circuit Judges; CALDWELL, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Robert D. Horvath, Troy, Michigan, for Appellants. Julie McCann O'Connor, O'CONNOR, DeGRAZIA & TAMM, Bloomfield Hills, Michigan, for Appellees. **ON BRIEF:** Robert D. Horvath, Troy, Michigan, for Appellants. Julie McCann O'Connor, O'CONNOR, DeGRAZIA & TAMM, Bloomfield Hills, Michigan, for Appellees.

_____

## OPINION

_____

KAREN K. CALDWELL, District Judge. Plaintiffs-Appellants R.S.W.W., Inc., d/b/a Goose Island Brewery and its sole shareholder Richard Skinner (together "Goose Island") appeal the district court's dismissal of their constitutional claims asserted under 42 U.S.C. § 1983 against Defendants-Appellants City of Keego Harbor ("Keego Harbor") and various city officials (together the "Defendants") and police officers. Goose Island charges that the Defendants unconstitutionally attempted to force it to close its microbrewery earlier than required by Michigan law. The district court dismissed all claims. We **AFFIRM** in part, **REVERSE** in part and **REMAND** to the district court for proceedings not inconsistent with this Opinion.

---

[*]The Honorable Karen K. Caldwell, United States District Judge for the Eastern District of Kentucky, sitting by designation.

## I. FACTS AND PROCEDURE.

### A. Goose Island's Complaint and the Motion to Dismiss.

According to Goose Island's complaint (the "Complaint"), at the time this action began, it owned and operated Goose Island Brewery (the "Brewery"), an establishment that sold food and alcoholic beverages in Keego Harbor, Michigan. The Complaint states that Keego Harbor is a small community of approximately 3,000 residents situated close to Cass Lake, Sylvan Lake and the Clinton River. When it opened the Brewery in 1995, Goose Island held various permits from the Michigan Liquor Control Commission ("MLCC") including a Class "C" liquor license and a brewpub license which permitted it to serve alcoholic beverages. The licenses granted to Goose Island by the MLCC were in effect at the time this action was filed.

Michigan laws and regulations permit liquor licensees to serve food and alcohol until 2:00 a.m. Goose Island asserts that the MLCC has complete control over alcohol sales in the state of Michigan and that local communities cannot require MLCC-licensed establishments to close earlier than 2:00 a.m. Goose Island charges, however, that, beginning in 1997, Keego Harbor and certain city officials set out on an unlawful harassment campaign to force Goose Island to close the Brewery at 11:00 p.m.

This unlawful harassment campaign allegedly consisted of the city withholding certain administrative approvals requested by Goose Island and inordinate police surveillance directed at Goose Island, its patrons and its employees. Specifically, Goose Island charges that the city refused to grant it a requested zoning variance, approval of a site plan amendment and permission to change the name on its sign. Goose Island also charges that the city police conducted daily "drive-throughs" of Goose Island's parking lot; stopped the vehicles of Goose Island's customers and employees and, in some cases, issued them tickets; parked their police cars near Goose Island where patrons and customers would see them; and lodged a complaint against Goose Island with the MLCC. According to the Complaint, the police scrutiny caused a significant drop in its monthly sales.

In the Complaint, Goose Island asserted a claim under 42 U.S.C. § 1983[1] against the city of Keego Harbor, its City Manager at the time of the events in question (Michael Steklac), its Chief of Police at the time of the events in question (Jack Beach), and various members of its city council during the events in question (Ralph Behler, Robert Burns, Arthur Nance and David Hofmann).[2] The individuals were sued in both their individual and official capacities.

The district court discerned various constitutional claims in the Complaint. Relevant to this appeal are Goose Island's claims that the Defendants violated its rights to due process by way of "unconstitutional conditions" and that the city's ordinance regulating signs (the "Sign Ordinance") violates the First Amendment. *R.S.S.W., Inc. v. City of Keego Harbor*, 18 F.Supp.2d 738, 744 (E.D. Mich. 1998), *recon. denied*, 56 F.Supp.2d 798 (E.D. Mich. 1999)[3].

---

[1] Section 1983 provides for legal and equitable remedies against any person who, under color of state law, deprives any person of any "rights, privileges, or immunities secured by the Constitution and laws . . . . " 42 U.S.C. § 1983.

[2] In its initial complaint, Goose Island also named the MLCC and its chairperson as defendants but later dismissed them.

[3] In all pleadings before this Court, the corporate plaintiff is identified as R.S.W.W., Inc. The plaintiff is incorrectly designed at R.S.S.W., Inc. in the published opinions of the district court.

On the Defendants' Motion to Dismiss the Complaint, the district court dismissed the challenge to the Sign Ordinance. The district court also dismissed the claims against the individual city council members determining that they were entitled to absolute legislative immunity.[4]

### B.        The Amended Complaint and Motion for Summary Judgment.

In May, 2000, the district court granted Goose Island's motion to amend the Complaint to add two Keego Harbor police officers as defendants. It denied Goose Island permission to add as defendants the city planning consultant and his company, Phillip McKenna and McKenna Associates, Inc. (together, "McKenna"). Goose Island then filed a Second Amended Complaint[5] adding the two police officers, Gregory Palmer ("Palmer") and Daniel Reynolds ("Reynolds"), and charging that Palmer and Reynolds carried out the inordinate police scrutiny of Goose Island, its patrons and employees (the "Second Amended Complaint").

The amended complaint also stated that Goose Island had been forced to close the Brewery soon after commencing this action because the Defendants' actions had made it "unfeasible" for it to continue operations. The amended complaint further charged that Goose Island had been unable to sell its property because the Defendants' actions had "significantly, and negatively, impacted the marketability of [Goose Island's] property/licenses, and have impaired fair market value."

The officers then moved for summary judgment of the claims made in the Second Amended Complaint. The district court determined that, with the amended complaint, Goose Island was attempting to assert equal protection and due process claims against the officers and dismissed both claims.[6]

### C.        Dismissal of Unconstitutional Conditions Claim for Lack of Jurisdiction.

By October, 2001, the sole remaining claim in the action was Goose Island's claim that Keego Harbor and its city manager and police chief had violated the doctrine of "unconstitutional conditions." At that time, the Defendants moved to dismiss the claim for lack of subject matter jurisdiction. By Order dated November 6, 2001, the district court granted the motion to dismiss. Goose Island then filed a notice of appeal.

### D.        Issues on Appeal.

On appeal, Goose Island charges that the district court erred 1) in ruling that it did not have subject matter jurisdiction over Goose Island's unconstitutional conditions claim; 2) in ruling that Goose Island did not have standing to assert a challenge to the Sign Ordinance; 3) in ruling that the city council members were entitled to legislative immunity; 4) in dismissing the police officers; and

---

[4]The ruling on the Motion to Dismiss was entered on September 16, 1998 by District Judge Horace W. Gilmore. On November 2, 1998, the case was transferred to District Judge Paul V. Gadola.

[5]A First Amended Complaint was filed at the request of the district court to clarify the issues remaining after Goose Island's dismissal of the MLCC and its chairperson. *R.S.S.W., Inc. v. City of Keego Harbor*, 18 F.Supp.2d at 740 n.1 (E.D. Mich. 1998).

[6]In its Summary Judgment, the district court also dismissed Goose Island's claim that the Defendants had violated its rights under the Due Process Clause by depriving it of a property right in its license and a liberty right in engaging in its chosen profession. On appeal, Goose Island does not challenge the district court's dismissal of this claim and this Court will not, therefore, address the propriety of that dismissal.

5) in denying Goose Island's motion to amend the pleadings to add the city planning consultant and his company.[7]

## II. ANALYSIS.

### A.        Standards of Review.

This court reviews *de novo* a district court's grant of a motion to dismiss. *Montgomery v. Huntington Bank*, 346 F.3d 693, 697-98 (citation omitted). In reviewing a motion to dismiss, we must construe the complaint in the light most favorable to the plaintiff and find dismissal proper only if it appears beyond doubt that the plaintiff cannot prove any set of facts in support of his claims that would entitle him to any relief. *Id.* (citation omitted).

This court also reviews *de novo* the district court's grant of summary judgment using the same Rule 56(c) standard as the district court. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999). In accordance with Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In deciding a motion for summary judgment, we view the factual evidence and draw all reasonable inferences in favor of the non-moving party." *Williams*, 186 F.3d at 689 (citation omitted). The moving party has the burden of proving that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter of law. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477-78 (6th Cir. 1989). A dispute over a material fact cannot be "genuine" unless a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A district court's denial of a motion to amend a complaint is reviewed for an abuse of discretion. *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 783 (6th Cir. 2000). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996) (quoting *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989).

### B.        Dismissal of Unconstitutional Conditions Claim for Lack of Subject Matter Jurisdiction.

Pursuant to 28 U.S.C. § 1331, district courts have jurisdiction over all civil actions arising under federal laws or the Constitution. The party attempting to show that federal jurisdiction exists bears the burden of demonstrating jurisdiction "by competent proof." *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942).

---

[7]Goose Island also asserts that the district court erred in ruling that Goose Island did not have standing to assert an equal protection claim against the City and the city officials based on unequal enforcement of traffic laws. The district court actually dismissed this claim on two grounds. As recognized by Goose Island, the district court held that Goose Island had no standing to assert the claim because the alleged unequal enforcement actions were directed at Goose Island's customers and employees and not at Goose Island itself. *R.S.S.W., Inc. v. City of Keego Harbor*, 18 F.Supp.2d at 747. The district court also held, however, that Goose Island's allegations of inordinate police scrutiny could not form the basis for an equal protection claim because Goose Island had only alleged increased traffic stops and police presence but not actual *enforcement* of laws. *Id.* On appeal, Goose Island does not challenge this second grounds for dismissal of its equal protection claim against the City and city officials. Goose Island's failure to do so moots any need for this Court to address the alternative grounds for dismissal of the claim. Thus, the Court declines to address whether the district court properly determined that Goose Island lacked standing to assert an equal protection claim against the City and city officials based on unequal enforcement of traffic laws.

With its unconstitutional conditions claim, Goose Island asserts that the Defendants withheld certain administrative approvals from it unless it agreed to close at 11:00 p.m. In dismissing the claim, the district court determined that, "[f]or the reasons set forth in Defendant's briefs," Goose Island had not adequately identified the federal right which it alleged that the Defendants had deprived it of in violation of 42 U.S.C. § 1983. Examining the Defendants' brief in support of their Motion to Dismiss, it appears that the district court dismissed the unconstitutional conditions claim because it was premised only upon a state law governing alcohol sales but did not involve any federal right as required for the court's jurisdiction.

Under the unconstitutional conditions doctrine, "a state actor cannot constitutionally condition the receipt of a benefit, such as a liquor license or an entertainment permit, on an agreement to refrain from exercising one's constitutional rights . . . ." *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1077 (6th Cir. 1994).

> For at least a quarter-century, this Court has made clear that even though a person has no "right" to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests . . . .

*Perry v. Sindermann*, 408 U.S. 593, 597 (1972); *See also Amelkin v. McClure*, 330 F.3d 822, 827-28 (6th Cir.)(stating that "unconstitutional conditions" doctrine holds that government may not grant a benefit on condition that the beneficiary surrender a constitutional right, even if the government may withhold the benefit altogether), *cert. denied*, 124 S.Ct. 827 (2003).

Clearly, a federal court has jurisdiction over a properly asserted unconstitutional conditions claim because it involves the infringement of a constitutional right. In determining whether the district court had subject matter jurisdiction over Goose Island's unconstitutional conditions claim, the Court must first examine the validity of the constitutional right asserted. Goose Island appears to assert that its right to due process was infringed because the city attempted to force it to relinquish that right by withholding certain government benefits.

As this Court has previously recognized, while the unconstitutional conditions doctrine has been most consistently applied to protect First Amendment rights, it has also been applied by the Supreme Court to other constitutional provisions, including the Takings Clause. *Woodard v. Ohio Adult Parole Authority*, 107 F.3d 1178, 1190 (6th Cir. 1997)(citations omitted), *rev'd on other grounds*, 523 U.S. 272 (1998). The doctrine should equally apply to prohibit the government from conditioning benefits on a citizen's agreement to surrender due process rights. *See, e.g.*, *Vance v. Barrett*, 345 F.3d 1083, 1089 (9th Cir. 2003)(applying the unconstitutional conditions doctrine to protect rights to due process).

In order to assert a valid due process claim, however, a plaintiff must establish that the interest asserted is a liberty or property interest protected under the Fourteenth Amendment. *Wojcik v. City of Romulus*, 257 F.3d 600, 609 (6th Cir. 2001). Goose Island argues that it had a protected property right in its liquor license which included the right to certain hours of operation. In *Wojcik*, this Court recognized that "Michigan courts have held that the *holder* of a liquor license has a constitutionally protected interest and is therefore entitled to proper proceedings prior to making decisions regarding renewal or revocation." *Id.* at 609-10 (citing *Bisco's, Inc. v. Michigan Liquor Control of Comm'n*, 238 N.W.2d 166, 167 (Mich. 1976)). The issue before this Court, however, is whether Goose Island had a property interest in certain hours of operation.

In *Board of Regents v. Roth*, 408 U.S. 564 (1972), the Supreme Court explained that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire

for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577. Constitutionally protected property interests are not created by the Constitution itself but rather by "existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*

"[A] party cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary." *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002). Thus, in order to establish a constitutionally protected property interest in remaining open until 2:00 a.m., Goose Island "must point to some policy, law, or mutually explicit understanding that both confers the benefits and limits the discretion of the City to rescind the benefit." *Id.* at 410.

In *Med Corp.,* MedCorp., an ambulance company licensed to provide ambulance services in Lima, Ohio, sued the city when the city suspended the dispatch of 911 calls to the company for one week. As is the case with Goose Island's liquor license, there was no question that MedCorp. had a property interest in its *license*. *Id.* at 411. MedCorp. charged, however, that it also had a property interest in receiving 911 dispatches. *Id.* at 409. The district court determined that Med Corp. did not have a property interest in receiving 911 dispatches from the city because there was no enforceable policy or procedure restraining the city's discretion to suspend the dispatches. *Id.* at 408. This Court agreed finding that it was undisputed that there was no written policy or legislative enactment that established a procedure for maintaining the 911 dispatch list or that limited the city's discretion to remove ambulance companies from the list. *Id.* at 410.

In this case, however, Rule 436.1403 of the Michigan Administrative Code provides that "an on-premises licensee shall not sell, give away, or furnish alcoholic liquor between the hours of 2 a.m. and 7 a.m. on any day . . . ." Mich. Admin. Code r. 436.1403(1). On its face, the rule does not grant licensees a right to remain open *until* 2:00 a.m. but merely provides that licensees cannot sell liquor *after* 2:00 a.m. Nevertheless, in *Noey v. City of Saginaw*, 261 N.W. 88 (Mich. 1935), the Supreme Court of Michigan determined that a Michigan city ordinance cannot fix closing hours to a period shorter than that specified in the state rule.[8] Thus, in this matter, in contrast to *Med. Corp.*, there is a written regulation that both confers the benefit at issue (serving alcohol until 2:00 a.m.) and prohibits city officials from rescinding the benefit.

"The legal definition of 'property' most often refers not to a particular physical object, but rather to the legal bundle of rights recognized in that object." *Brotherton v. Cleveland*, 923 F.2d 477, 481 (6th Cir. 1991). *See also U.S. v. Frost*, 125 F.3d 346, 367 (6th Cir. 1997). Included in this bundle of rights are the rights to "possess, use and dispose" of a particular article. *Brotherton*, 923 F.2d at 481. Under Michigan law, a liquor license is property which includes the right to serve alcohol until 2:00 a.m. Accordingly, just as a licensee's license could not be revoked without due process, neither can a licensee's right to serve alcohol until 2:00 a.m. be revoked without due process. *Cf. Sea Girt Restaurant & Tavern Owners Ass'n v. Borough of Sea Girt*, 625 F.Supp. 1482, 1487-89 (D. N.J.) (holding that a New Jersey liquor license is a property interest for purposes of due process analysis and that the statutory process by which municipalities set the hours during which alcoholic beverages may be sold must afford procedural due process to licensees), *aff'd*, 802 F.3d 448 (3rd Cir. 1986).

If Keego Harbor had forced Goose Island to close at 11:00 p.m. without any prior procedure, that action clearly would have violated Goose Island's constitutionally protected property rights.

---

[8]The state regulation in effect at the time of the *Noey* decision was substantially similar to Rule 436.1403, providing that, "no licensee. . . shall sell or permit the sale of any alcoholic liquor for consumption on the premises between the hours of 2:00 o'clock and 7:00 o'clock A.M. Eastern Standard Time. . . . " *Noey*, 261 N.W. at 89.

Pursuant to the "unconstitutional conditions" doctrine, Keego Harbor cannot indirectly force Goose Island to close at 11:00 p.m. by withholding government benefits. The fact that Goose Island apparently never closed at 11:00 p.m. is irrelevant. The due process violation at issue is the city's alleged requirement that Goose Island choose between its due process rights in certain hours of operation and the desired city approvals. *See Vance*, 345 F.3d at 1088 n.5.

Goose Island's allegation that the city withheld approval of its request for a site plan amendment and a zoning variance and its request to change the name on its sign until Goose Island would agree to shorten its operating hours at least raises a constitutional question over which the district court had jurisdiction. Accordingly, the district court erred in dismissing Goose Island's unconstitutional conditions claim on grounds that it lacked subject matter jurisdiction. Whether Goose Island can produce any evidence to support the claim or should ultimately prevail are separate issues that are not before this Court since the district court did not address the merits of this claim.

## C.    Dismissal of Challenge to Sign Ordinance.

Goose Island argues on appeal that the district court incorrectly dismissed its facial challenge to the Sign Ordinance which makes it unlawful "for any person to erect, re-erect, alter or relocate any sign un less [sic] a permit shall have been first obtained from the Building Inspector. . . ." With its Complaint, Goose Island charged that the city had refused to consider its request to change the name on its business sign and alleged that the Sign Ordinance violates the First Amendment "since it is not confined by narrow, definite and objective guidelines." The district court dismissed Goose Island's facial challenge to the ordinance finding that Goose Island had no standing to assert the claim because the city had not denied Goose Island's request to change its sign but only postponed consideration of it pending the resolution of the zoning disputes. *R.S.S.W., Inc.*, 18 F.Supp.2d at 748.

"[W]hen a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 755-56 (1988). The "root of this long line of precedent is the time-tested knowledge that in the area of free expression a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." *Id.* at 757.

Plaintiffs cannot assert third party standing in every First Amendment facial challenge to an ordinance– only in vagueness and overbreadth challenges. *Brandywine, Inv. v. City of Richmond*, 359 F.3d 830, 835 (6th Cir. 2004). It is well established that a plaintiff has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not he has applied for a license. *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 889 (6th Cir. 2002)(quoting *Freedman v. Maryland*, 380 U.S. 51, 56 (1986)).

Goose Island challenges the Sign Ordinance on the basis that its grants overly broad licensing discretion that permitted the city to withhold approval of its request to change its name on its business sign. For purposes of determining Goose Island's standing on this claim, it is irrelevant that the city did not actually deny Goose Island's request to change its sign but only delayed consideration of the request. In fact, a form of overly broad licensing discretion subjecting an ordinance to a third-party facial challenge is the failure to place brief, specific time limits on the decision-making process. *Id.* The district court erred in ruling that Goose Island has no standing to challenge the Sign Ordinance on First Amendment grounds and this matter will be remanded to the district court for a ruling on the merits of that claim.

### D.     Dismissal of City Council Members.

In its ruling on the Motion to Dismiss, the district court dismissed the individual city council members – Behler, Burns, Nance, and Hofmann – from the action finding that they were entitled to absolute legislative immunity because their alleged wrongful actions were legislative acts. *Id.* at 749. Local legislators are entitled to absolute immunity "when they act in their legislative capacities." *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989). "Absolute legislative immunity attaches to all actions taken in the sphere of legitimate legislative activity." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998)(quotations and citation omitted).

The district court determined that Goose Island had only alleged that the city council members participated in the passage of various ordinances[9] and that Goose Island had failed to make any specific allegations regarding non-legislative acts by any single council member. *R.S.S.W., Inc.*, 18 F.Supp. 2d at 749. On appeal, Goose Island argues that the district court improperly granted the individual city council members legislative immunity because its Complaint against them was based, not on legislative activity, but on the city's "policy" of harassing Goose Island into closing three hours earlier than required under state law. Goose Island alleges generally that the city council created the "close at 11 p.m." demand and then pressured the City Manager and Police Chief to force Goose Island to comply.

The only claims that remain in this action are the unconstitutional conditions claim and the Sign Ordinance claims. The passage of the Sign Ordinance is a purely legislative act for which all council members are immune from suit. *Shoultes*, 886 F.2d at 117-18 (mayor and council were clearly acting in their legislative capacities in passing zoning ordinance and, thus, absolutely immune from suit where ordinance was subsequently held invalid). The actions that are relevant to the unconstitutional conditions claim are the city's alleged refusals to grant Goose Island the site plan amendment unless it agreed to close at 11:00 p.m.; the city's alleged refusal to grant Goose Island the zoning variance unless it agreed to close at 11:00 p.m.; and the city's alleged refusal to grant Goose Island permission to change its business sign unless it agreed to close at 11:00 p.m.

On appeal, Goose Island argues that it made specific allegations in the district court regarding non-legislative actions undertaken by Defendant Hofmann. Goose Island points to minutes of the city council and Planning Commission's meetings and the deposition transcripts of Hofmann's neighbor and of police chief Jack Beach. These documents certainly make clear that Hofmann objected to Goose Island's operations. Nevertheless, these documents do not evidence any activity relevant to Goose Island's unconstitutional conditions claim, i.e., that Hofmann caused the relevant government officials to fail to approve Goose Island's administrative requests unless it agreed to close at 11:00 p.m.

Goose Island has alleged generally that the city council pressured other city officials to force Goose Island to close at 11:00 p.m. Nevertheless, in its pleadings before the district court, Goose Island alleged no specific activity by any individual council member with regard to its unconstitutional conditions claim. The district court correctly concluded that the only actions that Goose Island alleged that the individual city council members undertook relevant to its complaint were legislative actions. Accordingly, the district court correctly concluded that the individual city council members were entitled to legislative immunity. Therefore, we affirm the district court's dismissal of the individual city council members as parties to this action.

---

[9]In addition to its challenge to the Sign Ordinance, before the district court, Goose Island challenged Keego Harbor ordinances governing zoning and the revocation of liquor licenses. After its ruling on the Motion to Dismiss, the district court denied Goose Island's motion that the liquor and zoning ordinances be declared unconstitutional. That ruling is not challenged on appeal.

### E.       Dismissal of Police Officers.

Goose Island added police officers Palmer and Reynolds as defendants to this action in its Second Amended Complaint. The amended complaint asserts generally that Palmer and Reynolds "carried out their police patrol activities in this improper fashion, deciding to focus law enforcement activities against plaintiffs because Keego Harbor's city council wanted plaintiffs to close at 11 p.m." The amended complaint asserts that the officers stopped and, in some cases, ticketed patrons and employees; lodged a complaint with the MLCC against Goose Island; and entered the business after closing and demanded that employees depart.

In ruling on the officers' Motion for Summary Judgment, the district court determined that, with the Second Amended Complaint, Goose Island was asserting equal protection and due process claims against the officers and dismissed both claims. On appeal, Goose Island argues that the district court should have analyzed its claim against the officers as a retaliation claim and not as a vindictive enforcement claim.

With the various motions made by the Defendants below, the district court was asked to analyze the claims made in the Complaint and the Second Amended Complaint. From the pleadings, it is not clear which claims Goose Island asserts against any particular defendant, much less the individual defendants. Where the pleadings do mention actual causes of action, they are mentioned only in connection with *Keego Harbor* or, more generally, *Defendants*.

As to Reynolds and Palmer, the Second Amended Complaint does not assert any causes of action against them specifically.[10] The complaint asserts that the "police actions" generally violated "equal protection of the laws" and Goose Island's rights to "procedural due process." The complaint mentions a retaliation claim but appears to assert it only against the city,[11] not against Reynolds and Palmer in their individual capacities. The complaint states:

> And, to the degree *Keego Harbor's* police and administrative actions are in retaliation for Plaintiff's refusal to close at 11:00 p.m. and for Plaintiff's concomitant recourse to their administrative and/or judicial remedies, *Keego Harbor's* actions violate the Fourteenth and First Amendments since they have taken place because Plaintiffs have chosen to defend their legal rights by pursuing their available remedies.

> Second Amended Complaint, ¶ 12 (emphasis added).

In its response to the officers' Motion for Summary Judgment filed in the district court, Goose Island does not mention a retaliation claim but discusses only an equal protection claim against the officers in their individual capacities.

Before this Court, Goose Island appears to recognize that it asserted only an equal protection claim against the officers but argues that the district court should have analyzed that claim as a retaliation claim. Goose Island's retaliation claim, however, does not implicate the Equal Protection Clause. A retaliation claim is a claim that "government officials retaliated against the plaintiffs for

---

[10]Nor does the complaint state that Goose Island is asserting any claims against the officers in their individual capacities. Nevertheless, because the officers asserted qualified immunity as a defense to the equal protection and due process claims, it appears that the officers understood that Goose Island was asserting those claims against the officers in their individual capacities.

[11]The district court dismissed Goose Island's retaliation claim against the city in its Summary Judgment and Goose Island does not challenge that dismissal on appeal.

exercising their constitutional rights." *Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999). The essence of the claim is that the plaintiff engaged in conduct protected by the Constitution or by statute, that the defendant took adverse action against the plaintiff, and that the adverse action was taken because of the protected conduct. *Id.* at 386-87.

To the extent that Goose Island alleges that government officials retaliated against it for accessing the courts, that claim arises under the First Amendment. *Thaddeus-X*, 175 F.3d at 391; *Hoeber on Behalf of NLRB v. Local 30*, 939 F.2d 118, 126 (3rd Cir. 1991) ("The filing of a lawsuit carries significant constitutional protections, implicating the First Amendment right to petition the government for redress of grievances, and the right of access to courts.") Goose Island's claim that government officials retaliated against it for exercising an alleged liberty or property right to stay open until 2:00 a.m. implicates, as Goose Island itself argues, the Due Process Clause. Goose Island's retaliation claim does not, however, arise under the Equal Protection Clause. *See*, *e.g.*, *Watkins v. Bowden*, 105 F.3d 1344, 1354 (11th Cir. 1997) ("A pure or generic retaliation claim, however, simply does not implicate the Equal Protection Clause."); *Grossbaum v. Indianapolis-Marion County Bldg. Auth.*, 100 F.3d 1287, 1296 n.8 (7th Cir. 1996)(Equal Protection Clause "does not establish a general right to be free from retaliation"). Thus, the district court did not err by failing to analyze Goose Island's equal protection claim against the officers as a retaliation claim.

Goose Island never properly asserted a retaliation claim against the officers in their individual capacities before the district court and, therefore, that claim will not be addressed on appeal. "This Court will not decide issues or claims not litigated before the district court." *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559 (6th Cir. 1990). Goose Island also argues that the district court incorrectly determined that the police officers were entitled to qualified immunity. The district court, however, determined that the officers were entitled to qualified immunity only as an "alternate ground" for dismissing the equal protection claim and only after determining that Goose Island had not created an issue of fact regarding the claim. Because the Court upholds the district court's dismissal of the equal protection claim on its merits, it need not address whether the officers were entitled to qualified immunity.

### F.        District Court's Denial of Motion to Amend Pleadings.

Federal Rule of Civil Procedure 15(a) states that leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). A district court abuses its discretion when it denies a motion to amend and "fails to state the basis for its denial or fails to consider the competing interests of the parties and the likelihood of prejudice to the opponent." *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986).

Goose Island filed this action in February, 1998. It moved to add McKenna as a defendant in January, 2000. In its order denying Goose Island's motion to add McKenna as a defendant, the district court adopted the findings of the magistrate judge. In rendering a decision, the magistrate judge specifically considered the following :

> Based on the pleadings and the representations of counsel, I'm going to find that there has been undue delay in filing the motion with respect to McKenna and McKenna and Associates. I believe that the addition of McKenna and McKenna and Associates at this period in time would be unduly prejudicial, both to the existing defendants, the City of Keego Harbor, and the individuals, as well as to McKenna.
>
> What the addition of McKenna and McKenna and Associates in this lawsuit would require is reopening the whole case. This case has been going on for several years. It went on previous to that, I believe, in the state court's litigation between these parties. I am not about, at this stage of the proceeding when discovery is closed, to

– to add a new party, following which discovery is going to reopen completely on all the issues in the case.

Tr. Mot. Hr'g, pp. 28-29.

Thus, the magistrate judge found that there had been undue delay in the filing of the motion and that the addition of McKenna would be unduly prejudicial to the existing Defendants given that discovery was already complete. The magistrate judge further considered that Goose Island retained the right to sue McKenna in a separate action. As the district court did not abuse its discretion, we affirm its denial of Goose Island's motion to amend its complaint to add McKenna.

### III. CONCLUSION.

For the foregoing reasons, we **REVERSE** the district court's Order dismissing Goose Island's unconstitutional conditions claim and the district court's Order dismissing Goose Island's challenge to the Keego Harbor sign ordinance; we otherwise **AFFIRM** the district court and; we **REMAND** to the district court for further proceedings not inconsistent with this Opinion.